IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

BILLINGS DIVISION

——————————————

| | | |
|---|---|---|
| SABAH MALLAK, | ) | Cause No. CV 07-53-BLG-RFC-CSO |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | FINDINGS AND |
| | ) | RECOMMENDATION OF |
| MIKE MAHONEY; ATTORNEY | ) | U.S. MAGISTRATE JUDGE |
| GENERAL OF THE STATE OF | ) | |
| MONTANA, | ) | |
| | ) | |
| Respondents. | ) | |

——————————————

This case is before the Court on Petitioner Sabah Mallak's petition

for writ of habeas corpus under 28 U.S.C. § 2254.  Mallak is a state

prisoner proceeding with appointed counsel.  Mallak challenges two

convictions, one for burglary and one for witness tampering.

I. Procedural Background in This Court

The pleadings closed after the State filed its Answer and Mallak

filed a pro se Reply.  The Court reviewed the pleadings and determined that discovery, an evidentiary hearing, or oral argument might be appropriate.  Order Requiring Resp. from Pet'r (doc. 22).  Counsel was appointed to represent Mallak.  Order to Federal Defenders to Locate Counsel (doc. 24).  Briefing was ordered on the claims in the petition.  Am. Sched. Order (doc. 30).

The briefs fully addressed the burglary claim, but the Court did not believe their legal analysis was complete as to the procedural aspects of the witness tampering claim.  On August 12, 2009, the Court issued an order explaining that Mallak may not obtain relief against the burglary conviction.  Order Requiring Further Briefing (doc. 35) at 9-11.  At the same time, further briefing was required on the issue of procedural default with respect to the witness tampering conviction.

In response to the Order, counsel for Mallak submitted a single-page brief conceding that the State's brief "correctly set forth the state of the law and the facts."  Pet'r Resp. (doc. 42) at 1.  Despite counsel's appointment, Mallak was permitted to file a brief pro se in response to the State's brief on procedural default, and the State was duly permitted to

FINDINGS AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE / PAGE 2

respond to Mallak.  Order Granting Mot. (doc. 45) at 2.

The State seeks to hold Mallak to his counsel's concession of procedural default.  Resp't Br. in Resp. to Order of Nov. 4, 2009 (doc. 46) at 5-6.  For the reasons set forth here, it is inappropriate to bind Mallak to counsel's position.

II. Factual and Procedural Background in State Court

Following is a general background.  Additional facts are provided as relevant in the Analysis section.

On or about November 2, 2000, Mallak went to the home of Tracie Dewey, a woman with whom he once had a relationship.  The two argued.  According to Dewey, Mallak assaulted her.  Mallak left, then returned.  He kicked the door down and punched Dewey in the face.  Tr. July 30, 2001, at 33:3-18 (Ex. G19).[1]

On November 8, 2000, Mallak was charged in Montana's Thirteenth

---

[1]   Except for Exhibit J, the exhibits cited in this Order are attached to the Answer (doc. 13).  Transcript citations refer first to the pages as numbered by the court reporter and then to the page of the exhibit as numbered by CM-ECF.  For example, "Tr. July 30, 2001, at 33:3-18 (Ex. G19)" refers the court reporter's page 33, lines 3-18, of the transcript of July 30, 2001, which is located at page 19 of Exhibit G.  Citations to exhibits that are not transcripts give only the CM-ECF page number.

Judicial District Court, Yellowstone County, with partner or family member assault ("PFMA"). State v. Mallak, 109 P.3d 209, 211 ¶ 6 (Mont. 2005) ("Mallak I"). He was arrested and jailed.

On December 30, 2000, using the name "Pedro Blanco," Mallak wrote a letter to Dewey, telling her that she could be prosecuted for perjury and that she should tell the trial court she was moving out of town before trial. Based on that letter, the State charged Mallak with witness tampering. Tr. July 30, 2001, at 4:15-5:3, 7:16-19 (Ex. G10-G11); Mont. Code Ann. § 45-7-206 (1999). Mallak also called Dewey and wrote her another letter under the name of "Mick Miller." The phone call and second letter resulted in two misdemeanor charges of criminal contempt. Tr. July 30, 2001, at 11:21-12:13, 12:24-13:19 (Ex. G12-G13); Mont. Code Ann. § 45-7-309(2) (1999).

After four amendments to the Information, Ex. J1-J3,[2] Mallak faced charges of PFMA, burglary, witness tampering, and two counts of criminal contempt. The first trial ended in mistrial. A second trial was set for July 30, 2001. Mallak I, 109 P.3d at 211 ¶ 6. Sandy Selvey and Melissa

---

[2] Exhibit J (doc. 15 #1) was filed separately from the Answer.

Findings and Recommendation of U.S. Magistrate Judge / Page 4

Edwards represented Mallak.  Tr. July 30, 2001, at 2:14 (Ex. G10).

On July 30, at 9:15 a.m., before voir dire began, Mallak pled guilty to witness tampering and the two criminal contempt counts.  Mallak was reluctant to admit that he sent the letter to Dewey "so that she would not testify against me," id. at 15:14-15 (Ex. G13), but he eventually did so. Following a discussion among the parties and the Court about evidentiary issues, a recess was called at 10:25 a.m.  Id. at 2:7-27:11 (Ex. G10-G16).

Mallak's guilty pleas left two charges for trial to the waiting jury, PFMA and burglary.  Court reconvened at 11:01 a.m.  Mallak then told the trial court that he wanted to plead no-contest to the burglary charge. Id. at 27:15-25 (Ex. G16).  Before taking the burglary plea, the trial court said, "Now, we were all here on Friday ready to take a no-contest plea to the burglary, as I understood, and a plea to the witness tampering charge. . . . [A]re we proceeding forward today with that same plea agreement; is that everybody's understanding?"  Id. at 28:15-22 (Ex. G16).  Everyone agreed.  Mallak signed a document titled "Acknowledgement of Waiver of Rights by Plea of Guilty," agreeing to enter a nolo contendere plea to burglary, which carried a twenty-year maximum penalty, and reserving

the right to appeal the trial court's denial of two pretrial motions relevant to burglary.  The State agreed to recommend a sentence of ten years' imprisonment with three years suspended, to run "concurrent to witness tampering."  The PFMA charge, Count I, was dismissed.  Ex. J7.

On September 17, 2001, Mallak, acting pro se, moved to withdraw his guilty pleas on the grounds that prescription medications prevented him from acting voluntarily and intelligently.  Ex. C1-C6.  The trial court heard evidence and argument on the motion on November 13, 2001, immediately before sentencing.  The judge concluded that Mallak was suffering from "buyer's remorse" and denied the motion.  Tr. Nov. 13, 2001, at 45:20-46:2 (Ex. H3-H4).

At sentencing, the State recommended a ten-year prison term on both the burglary and the witness tampering charges.  Defense counsel argued that Mallak was not a violent person and urged the trial court not to impose a prison sentence.  Mallak also spoke on his own behalf, requesting a probationary sentence.  The trial court found that a prison sentence was appropriate because Mallak acted violently in committing the burglary.  Id. at 92:2-9 (Ex. H50).  Mallak was sentenced to serve ten

years in prison for burglary and ten years for witness tampering, with three years suspended, and six months on each of the contempt convictions, all suspended, with all terms to run concurrently.  Id. at 92:15-23 (Ex. H50).  He was not designated a violent offender or required to register as a violent offender.

Mallak appealed.  New counsel, Wendy Holton, filed an opening brief on his behalf, and the State filed a response.  On April 23, 2003,[3] the trial court held a hearing on remand of the case from  the Montana Supreme Court to address Mallak's claims of ineffective assistance of appellate counsel and conflict of interest.  Although no decision appears in the record before this Court, Holton evidently was relieved as counsel, and Mallak filed a second opening brief pro se.  Ex. A35-B16.  In that brief, Mallak asserted he did not know the maximum penalty for witness tampering and that he "would not have plead to the charges so easily, just to 'get them out of the way' of the other charges," if he had known.  Ex.

---

[3] The State's Answer lists among its exhibits a fifty-page transcript of a hearing held in the trial court on January 7, 2003, regarding "Ineffective Assistance of Counsel and Motion to Withdraw Guilty Plea." See Answer (doc. 13) at 5.  The exhibit, however, was not filed.  This fact was brought to the parties' attention.  Order Requiring Further Briefing at 6 n.4.  From their silence, the Court assumes there was no hearing.

FINDINGS AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE / PAGE 7

A63.  He averred that the letter he sent to Dewey did not tell her not to testify.  Ex. A66.  He also claimed that his guilty plea to burglary was involuntary because no one told him that "he would be pleading to a violent offense."  Ex. B2.

In response, the State argued that Mallak was pursuing a new theory on appeal that was not presented to the trial court and urged the Montana Supreme Court to refuse to consider his new claims.  Ex. B61-B63.

On March 1, 2005, the Montana Supreme Court affirmed Mallak's conviction.  The court held that Mallak changed his theories on appeal and declined to address his claims.  Mallak I, 109 P.3d at 214 ¶¶ 28-31.

On December 20, 2005, Mallak filed a petition for postconviction relief in the trial court, seeking to withdraw his guilty pleas to witness tampering and burglary.  The trial court recharacterized the petition as a second motion to withdraw the pleas.  On March 7, 2006, the trial court denied the motion as to the burglary charge because an act of violence was not an element of the offense and Mallak was not sentenced as a violent offender.  The State was ordered to respond to Mallak's claim on the

witness tampering charge.  Ex. E46-E50.

On May 31, 2006, the trial court found that Mallak was not prejudiced by its failure to advise him of the maximum penalty for witness tampering because he did not receive additional prison time as a result of his guilty plea.  The trial court also found that Mallak's claims were refuted by the record.  Ex. I38-I41.

Mallak appealed.  On March 20, 2007, the Montana Supreme Court held that both of his claims were "barred by res judicata because Mallak could have raised the theory in the District Court in his original motion to withdraw his guilty pleas."  Mallak v. State, Nos. DA 06-0239 & 06-0413, 2007 WL 824447 at *3 ¶ 17 (Mont. Mar. 20, 2007) (unpublished) ("Mallak II").

Mallak timely filed his petition in this Court on April 3, 2007.  Pet. at 8 ¶ C; Houston v. Lack, 487 U.S. 266, 270-71 (1988) (establishing prison mailbox rule).

III. Mallak's Allegations

Mallak asserts that he was not told before he pled guilty to witness tampering that he could be sentenced to prison on that charge.  He adds

FINDINGS AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE / PAGE 9

that there was no plea agreement and that he had no realistic opportunity to challenge his plea before he was sentenced.  Pet. (doc. 1) at 4 ¶ 15A; id. at 5.

As to the burglary charge, Mallak alleges that the trial court should have advised him that he was pleading guilty to an offense that involved an act of violence.  He contends that he chose to plead guilty to burglary rather than partner/family member assault ("PFMA") in order to avoid accepting responsibility for any violence and that the judge knew this.  Id. at 4 ¶ 15B.

For his relief, Mallak seeks withdrawal of his pleas and "a right to a fair trial."  Id. at 7 ¶ 18.

IV. Analysis

A. Burglary

The Court's analysis of the burglary charge is set forth in the Order Requiring Further Briefing (doc. 35) at 9-11.

B. Witness Tampering

To be heard in federal court, a habeas claim must be (1) properly exhausted in the state courts and (2) either (a) not procedurally defaulted

in the state courts or (b) excused from any default in the state courts.  If it meets those criteria, the federal court addresses the claim on the merits.

In its Answer, the State argued that Mallak's claim was not properly exhausted.  The Court concluded it was.  In Montana, a federal claim has been fairly presented, and therefore proper exhaustion is established, if the petitioner has presented to the Montana Supreme Court a federal legal theory linked with the operative facts.  Mallak did that in his briefing in <u>Mallak II</u>.  Order Requiring Further Briefing at 13-25.

Even a properly exhausted claim, however, may still be procedurally defaulted.  The Montana Supreme Court may decline to address a fairly presented federal claim because the petitioner failed to comply with a state procedural rule.  That is what happened in Mallak's case.  Because the State's defense of procedural default rested entirely on its exhaustion analysis, and because that analysis was imprecise, the Court gave the State another opportunity to plead and prove its affirmative defense of procedural default.  <u>Id.</u> at 30-32; <u>Bennett v. Mueller</u>, 322 F.3d 573, 586 (9th Cir. 2003).

The State briefed its defense on September 15, 2009 ("Resp't Br.")

(doc. 38), and filed a reply to Mallak's pro se response on November 16, 2009.

      1.    Mallak's Claim and the Montana Supreme Court's Procedural Bar

Mallak contends that his guilty plea to witness tampering was involuntary and should be vacated because he did not know until sentencing that he could receive prison time on that charge. The Montana Supreme Court declined to address this claim:

> Mallak previously challenged his guilty pleas in a prior motion to the District Court and then appealed the court's denial based on a different theory, which we refused to consider. . . . Mallak's claim is barred by res judicata because Mallak could have raised the theory in the District Court in his original motion to withdraw his guilty pleas.

Mallak II, 2007 WL 824447 at *3 ¶ 17 (emphases added).[4]

In his Petition filed in this Court, Mallak said:

---

[4] The State quotes the Montana Supreme Court's description of the res judicata rule in Mallak's own case. "Res judicata bars relitigation of issues already determined on direct appeal." Mallak II, 2007 WL 824447 at *2 ¶ 12 (emphasis added), quoted in Resp't Br. at 7. That observation applied to Mallak's burglary claim, not his witness tampering claim. The State does not contend the Montana Supreme Court declined to consider Mallak's witness tampering claim in Mallak II because it was litigated or could have been litigated in Mallak I. The Montana Supreme Court located the default in the trial court, not in Mallak's direct appeal.

FINDINGS AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE / PAGE 12

Since this issue was not known until it was said and done at sentencing, I brought it up on direct appeal to be included with the other issues.  But the Supreme Court deni[ed] it saying I changed my argument on appeal and it could not decide on a issue that the district court never had a chance to decide on first.  (I never changed my argument on appeal, but only added the new issues since I didn't have any other forum to challenge it to my knowledge.)  So after the deni[ed] appeal, I put in a post-conviction petition to challenge this issue so I can give the district court an opp[o]rtunity to consider it like the Supreme Court suggested.  – The district court deni[ed] it, so on appeal for that issue, the Supreme Court now deni[ed] the appeal stating I should have brought up the issue before I was sentenced with my original motion to withdraw pleas.  That could not have been possible since the issue did not become an issue until the moment of sentencing after it was said and done.

Pet. at 5.

### 2. Procedural Default

#### a. Adequate and Independent State Grounds

When a petitioner exhausts his claim in the state courts, as Mallak did, the state court has had a "fair opportunity" to consider his claims. O'Sullivan v. Boerckel, 526 U.S. 838, 844 (1999).  Nonetheless, where the state court dismisses the claim based on a state procedural rule, as the Montana Supreme Court did, the federal court still has a comity obligation to the state court.  Just as the United States Supreme Court will not grant

a petition for certiorari where a federal claim has been decided on adequate and independent state grounds, so in habeas, a state court's reliance on an adequate and independent state ground in dismissing a claim will preclude federal review of that claim. <u>Coleman v. Thompson</u>, 501 U.S. 722, 731-32 (1991).

Procedural default is established if the state procedural rule is both adequate to support the judgment and independent of federal law. <u>Harris v. Reed</u>, 489 U.S. 255, 260-62 (1989); <u>Coleman</u>, 501 U.S. at 735, 740-44. A state procedural bar is "independent" if its application is not intertwined with an explicit or implicit holding of federal law, <u>Ake v. Oklahoma</u>, 470 U.S. 68, 74-75 (1985), or with "the federal question," <u>Coleman</u>, 501 U.S. at 734-35; <u>Townsend v. Knowles</u>, 562 F.3d 1200, 1206 (9th Cir. 2009).

A state procedural bar is "adequate" if it was "firmly established and regularly followed," <u>Collier v. Bayer</u>, 408 F.3d 1279,1284 (9th Cir. 2005) (quoting <u>Ford v. Georgia</u>, 498 U.S. 411, 423-24 (1991)), or "clear, consistently applied, and well-established," <u>id.</u>, at the time the petitioner should have complied with it. <u>See also, e.g.</u>, <u>Scott v. Schriro</u>, 567 F.3d 573,

580 (9th Cir. 2009); <u>High v. Ignacio</u>, 408 F.3d 585, 589-90 (9th Cir. 2005); <u>Zichko v. Idaho</u>, 247 F.3d 1015, 1021-22 (9th Cir. 2001); <u>Shumway v. Payne</u>, 223 F.3d 982, 989 (9th Cir. 2000).

"The adequacy of state procedural bars to the assertion of federal questions, we have recognized, is not within the State's prerogative finally to decide; rather, adequacy is itself a federal question." <u>Lee v. Kemna</u>, 534 U.S. 362, 375 (2002) (quoting <u>Douglas v. Alabama</u>, 380 U.S. 415, 422 (1965)) (internal quotation marks and brackets omitted). "A rule held generally adequate can be deemed inadequate as applied to particular unique circumstances." <u>Id.</u> If a state court applies a procedural requirement in a manner that is "exorbitant," <u>Lee</u>, 534 U.S. at 376, or "unrealistic," <u>Reece v. Georgia</u>, 350 U.S. 85, 89 (1955), the requirement may be inadequate to preclude federal review. <u>See also</u> <u>Hoffman v. Arave</u>, 236 F.3d 523, 531 (9th Cir. 2001).

Based on "Supreme Court case law, as well as considerations of fairness," a federal court considers both published and unpublished decisions of state courts in determining the adequacy of a state procedural bar. <u>Powell v. Lambert</u>, 357 F.3d 871, 879 (9th Cir. 2004).

### b. Proffered Procedural Bar

The first task in a procedural default analysis is to identify the procedural bar imposed.  The State says the bar is the doctrine of res judicata.  It concedes that, if the facts Mallak alleges are true, he could not have done what the Montana Supreme Court said he was required to do.  Resp't Br. at 10.  Instead, it identifies other occasions on which Mallak could have raised his claim sooner than he did.  Id. at 6, 10, 11, 12.

For three reasons, the State's argument shows that the procedural bar imposed by the Montana Supreme Court does not preclude federal review.  First, this Court may only consider the procedural bar "actually relied on in the particular case in question," Valerio v. Crawford, 306 F.3d 742, 773 (9th Cir. 2002) (en banc); see also Leavitt v. Arave, 383 F.3d 809, 832-33 (9th Cir. 2004) (per curiam), not the bar the State says could or should have applied.

Second, when the State acknowledges that Mallak could not have met the procedural bar at the time he filed his first motion to withdraw his guilty plea, it concedes that Montana law did not charge Mallak with

knowledge of errors in the record as of that time.[5]   Apart from the concession, the Court has not independently located any Montana statute, case, or rule charging a defendant, on pain of forfeiture, with the obligation to object to defects in a plea colloquy in the first post-colloquy motion to withdraw the plea.  Therefore, the bar actually applied was not clear, consistently applied, or well-established at the time Mallak should have taken steps to avoid it.

Third, the State has not cited, in any of its three post-Answer briefs on procedural default, a specific provision of Montana law that permitted Mallak to file a motion to withdraw his guilty plea "[a]t any time before or after judgment."  Mont. Code Ann. § 46-16-105(2) (2001) (emphasis added).[6]   The States argues that Mallak is charged with knowledge of the

_____

[5]   It is possible for rules, statutes, or cases to do just that by defining the point at which a claim is "available" to be raised, regardless of what the defendant actually knows.  See, e.g., Fed. R. Crim. P. 11(b)(1)(H) and (h); United States v. Dominguez-Benitez, 542 U.S. 74, 76 (2004); United States v. Vonn, 535 U.S. 55, 59 (2002) (requiring defendant to object at plea colloquy if trial court fails to advise him of maximum penalty).

[6]   The statute was amended in 2003 to require filing of such motions before judgment or within one year after judgment, unless the defendant supports a claim of innocence with evidence of a fundamental miscarriage of justice.  The time limit applies only to pleas entered after July 1, 2003. It does not apply to Mallak.  2003 Mont. Laws ch. 346 § 3.

doctrine of res judicata, so he should have known he could not present to the trial court a second or subsequent motion to withdraw his guilty plea after judgment was entered.  E.g., Resp't Br. at 12.  This argument is contradicted by the statute governing motions to withdraw a guilty plea.

While the statute might be read to permit either one motion before or one motion after judgment, the Court has not located any Montana Supreme Court decision imposing a one-motion rule or a numerical limit on motions to withdraw a guilty plea.[7]  Mallak II is the only Montana case the Court has found in which a defendant's second motion to withdraw his guilty plea was barred because it was a second motion or because it could have been made earlier than it was.[8]  Therefore, the manner in which the

---

[7]    The State concedes this fact as well.  Resp't Br. at 12 ("Mallak arguably could have . . . fil[ed] a second motion to withdraw his guilty plea.") (citing State v. Miller, 833 P.2d 1040, 1042 (Mont. 1992)).  The trial court's recharacterization of Mallak's postconviction petition as a second, post-judgment motion to withdraw his plea also strongly suggests that Montana law contains no such limitation.

[8]    A few cases go the other way.  State v. Yother, 831 P.2d 1347, 1350-52 (Mont. 1992) (considering on the merits defendant's third motion to withdraw his guilty plea without noting that facts alleged in support of motion were necessarily known to defendant when he filed his second motion); State v. Sparks, No. 03-675, 2004 WL 170314 (Mont. Jan. 28, 2004) (unpublished), and State v. Sparks, No. 96-008, available at http://courts.mt.gov (Mont. Mar. 3, 1997) (unpublished) (considering on

doctrine of res judicata applies to a motion to withdraw a guilty plea was not "clear, consistently applied, and well-established" in Montana law, Scott, 567 F.3d at 580 (emphasis in original), when the Montana Supreme Court held that it barred Mallak's claim.

Because these reasons establish that the procedural bar is not adequate to preclude federal review, there is no need to consider the additional difficulty that the trial court recharacterized Mallak's postconviction petition as a second motion to withdraw his guilty plea, resulting in procedural bar of a motion Mallak did not file.  The Montana Supreme Court's decision not to address Mallak's case does not preclude this Court from doing so.  It would be inappropriate, particularly in view of the contradiction between the State's res judicata argument and Mont. Code Ann. § 46-16-105(2) (2001), to hold Mallak to the consequences of his counsel's concession of procedural default.

       3. Clearly Established Federal Law Governing Guilty Pleas

---

the merits a defendant's second motion to withdraw plea after plea found voluntary on direct appeal, after denial of postconviction relief, and more than ten years after defendant entered his plea); State v. Miller, 833 P.2d 1040, 1041-42 (Mont. 1992) (considering on the merits a trial court's denial of a defendant's second motion to withdraw his guilty plea based on victims' recantation), cited in Resp't Br. at 12.

FINDINGS AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE / PAGE 19

a. Section 2254(d) and the "Last Reasoned Decision"

Section 2254(d) provides:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--

(1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Generally, a federal habeas court considers "the last reasoned decision in the state court system." Riggs v. Fairman, 399 F.3d 1179, 1182 (9th Cir. 2005). When the state's highest court relies on a procedural bar that does not preclude federal review, the federal court reviews the decision of the state court that made the last reasoned decision on the merits of the federal claim. Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). Here, that is the trial court.

A state court's decision is "contrary to clearly established precedent

FINDINGS AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE / PAGE 20

if the state court applies a rule that contradicts the governing law set forth in [the U.S. Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the] Court and nevertheless arrives at a result different from [its] precedent." Williams v. Taylor, 529 U.S. 362, 405-06 (2000). A state court's decision is an "unreasonable application" of federal law "if the state court identifies the correct governing legal rule from [the] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." Id. at 407. In sum, a federal court sitting in habeas must be convinced that the state court's decision is "more than incorrect or erroneous." Lockyer v. Andrade, 538 U.S. 63, 75 (2003). The state court's decision must be "objectively unreasonable." Id.

### b. Controlling Case Law

The controlling "clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), is found in Boykin v. Alabama, 395 U.S. 238 (1969), and Brady v. United States, 397 U.S. 742 (1970). See also Godinez v. Moran, 509 U.S. 389 (1993); Henderson v. Morgan, 426 U.S. 637 (1976); Smith v. O'Grady, 312 U.S. 329 (1941).

FINDINGS AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE / PAGE 21

Every time a guilty plea is taken in state or federal court, the record must show a knowing, voluntary, and intelligent waiver by the defendant of his central trial rights.  <u>Boykin</u>, 395 U.S. at 243-44.  This imperative is accompanied by few specifics.  Whether the requirement is met depends on "the totality of the circumstances."  <u>Henderson</u>, 426 U.S. at 644.  The Supreme Court has not prescribed any particular mode of inquiry, <u>McCarthy v. United States</u>, 394 U.S. 459, 464 (1969); <u>Bradshaw v. Stumpf</u>, 545 U.S. 175, 183 (2005), or any particular form the record must take.

But the Supreme Court has clearly established certain criteria for the voluntariness of a guilty plea.  Among these is the requirement that the defendant be "fully aware of the direct consequences" of pleading guilty.  <u>Brady</u>, 397 U.S. at 755 (quoting <u>Shelton v. United States</u>, 246 F.2d 571, 572 n.2 (5th Cir. 1957) (en banc)); <u>see also</u> <u>Boykin</u>, 395 U.S. at 244 & n.7 (trial judge must make record showing defendant "has a full understanding of what the plea connotes and of its consequence," <u>id.</u> at 244, including "the permissible range of sentences," <u>id.</u> n.7 (internal quotation marks omitted)).  "Waivers of constitutional rights not only

must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." Brady, 397 U.S. at 748. "The importance of assuring that a defendant does not plead guilty except with a full understanding of the charges against him and the possible consequences of his plea was at the heart of our recent decision[] in . . . Boykin." Brady, 397 at 748 n.6 (internal citation omitted).

In a case decided under the stringent standards of 28 U.S.C. § 2254(d), the Seventh Circuit explained:

> Although the Supreme Court has not defined the "direct consequences" of a guilty plea, it must have intended this term to encompass the maximum sentence for which a defendant is eligible. We can imagine no consequence of a defendant's guilty plea more direct, immediate, and automatic than the maximum amount of time she may serve as a result of her plea. While a defendant need not know all the consequences, such as loss of the right to vote or of the right to own a gun, or the effect on future sentences, he must certainly know the maximum punishment that he faces if he is convicted in the case at hand. . . . We conclude that the potential length of the sentence is one of the "direct consequences" to which the Supreme Court referred in Brady; thus, if Dalton was unaware of his eligibility for an extended term sentence when he pleaded guilty, it would be an unreasonable application of Brady to find that his plea was knowing and voluntary.

Dalton v. Battaglia, 402 F.3d 729, 733-34 (7th Cir. 2005) (internal

citations, quotation marks, and brackets omitted).

Not only the Seventh Circuit but every federal appellate court holds that the "direct consequences" of a guilty plea include the maximum penalty to which the plea exposes the defendant.[9]  Every federal court of appeal has held that a defendant must know the maximum penalty before he waives his trial rights by pleading guilty.  At least six circuits within the past ten years have found the requirement that a defendant know the maximum penalty to be "clearly established Federal law, as determined by the Supreme Court of the United States" under § 2254(d).  E.g., Jamison v. Klem, 544 F.3d 266, 276-77 (3d Cir. 2008) (granting relief under AEDPA where state defendant was advised of statutory maximum

---

[9]  Only post-AEDPA § 2254 cases are cited in the text.  Pre-AEDPA habeas cases under § 2254 demonstrate how well-established it is that defendants must know the penalty to which their guilty plea exposes them before they enter it.  E.g., Torrey v. Estelle, 842 F.2d 234, 235 (9th Cir. 1988) (Lovell, D.J., sitting by designation) ("A plea of guilty is voluntary only if it is entered by one fully aware of the direct consequences of his plea.  Before a court may accept a defendant's guilty plea, the defendant must be advised of the range of allowable punishment that will result from his plea."); Yellowwolf v. Morris, 536 F.2d 813, 815-17 & n.5 (9th Cir. 1976) (characterizing Boykin as "designed to prevent a prejudicial effect in any case by imposing a more easily reviewable requirement in every case" and remanding for evidentiary hearing based on pre-Boykin law where defendant alleged he would not have pleaded guilty in June of 1969 – two weeks after issuance of Boykin – had he known  maximum penalty).

but not mandatory minimum sentence); <u>Meyer v. Branker</u>, 506 F.3d 358, 367-68 (4th Cir. 2007) ("Meyer confirmed that he understood his potential punishment: this knowledge of the 'direct' consequences of his plea is all that is constitutionally required."); <u>McAdoo v. Elo</u>, 365 F.3d 487, 497 (6th Cir. 2004) (holding, where defendant was advised that he faced three life sentences, trial judge was not constitutionally required to "explain the meaning of 'life sentence' and other unambiguous terms during the plea colloquy" to dispel defendant's belief that "life sentence" meant twenty years); <u>Duke v. Cockrell</u>, 292 F.3d 414, 417 (5th Cir. 2002) (per curiam) ("direct consequences of a defendant's plea are the immediate and automatic consequences of that plea such as the maximum sentence length or fine."); <u>Wilcox v. Hopkins</u>, 249 F.3d 720, 725 (8th Cir. 2001) (finding petitioner adequately advised where he was told of maximum and minimum penalties at two arraignment hearings).

The constitutional significance of the penalty to which a guilty plea exposes a defendant is so profound that it informs an entirely separate line of authority concerning what a State must prove, or a defendant admit, to support a judgment.  Cf. <u>Blakely v. Washington</u>, 542 U.S. 296,

304 (2004); Apprendi v. New Jersey, 530 U.S. 466, 490 (2000) (requiring that facts exposing defendant to higher maximum penalty must be proven to jury beyond a reasonable doubt or admitted by defendant in plea colloquy).

Finally, though it cannot provide a basis for federal habeas relief, Montana law has, since at least 1967 – before both Boykin and Brady – required the trial court to "inform[] the defendant of the consequences of the plea and of the maximum penalty provided by law that may be imposed upon acceptance of the plea." Mont. Code Ann. § 46-16-105(1)(b) (2007).

### 4. Factual Findings of the State Trial Court

Factual findings of state courts are presumed correct unless rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). However, § 2254(e)(1) does not apply if the state court's decision is based on an "unreasonable determination" of the facts in the course of the state proceedings. Taylor v. Maddox, 366 F.3d 992, 1000 (9th Cir. 2004); 28 U.S.C. § 2254(d)(2).

The trial court found that Mallak was not advised at the plea

colloquy of the maximum penalty for witness tampering.  Ex. I36.  It also found that Mallak "had months of notice that a prison sentence for both charges [burglary and witness tampering] was a possibility," because, as Mallak's attorneys stated at the time he pled guilty to burglary, "the State had maintained the plea offer for months prior to Petitioner changing his plea."  Ex. I40.

The trial court made no finding as to whether Mallak would have gone to trial on the witness tampering charge if he had been advised before entering his guilty plea that he would be subject to a ten-year penalty.  See Mont. Code Ann. § 45-7-206(2) (1999).  The trial court made no specific finding as to Mallak's credibility.

### 5. The State Court's Decision

The trial court appropriately asked whether Mallak's guilty plea to witness tampering was voluntary, knowing, and intelligent.  Ex. I36.  It considered its own colloquy with him and the plea agreement.  It concluded that he "was not prejudiced by the Court's failure to inform him of the maximum possible sentence for a Witness Tampering conviction."  Ex. I38.

FINDINGS AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE / PAGE 27

Petitioner tried to change his plea to guilty, but the Court rejected it because he was not willing to admit that he wrote the letter to cause Ms. Dewey not to testify against him. Later, after pleading guilty to Counts IV and V (Criminal Contempt), Petitioner reinitiated his attempt to plead guilty and admitted the reason for writing the letter; the Court accepted his guilty plea.

Further, the State maintained its agreed recommendation – 10 years to the Montana State prison with three years suspended on both the Burglary and Witness Tampering counts, with the sentences for all counts, including the misdemeanor charges, to run concurrently. Petitioner's counsel noted, "The State has acted in good faith in that they have maintained this plea offer open for some time with the same recommendation, and this plea offer has been on the table for months on end." The other felony charge, Partner or Family Member Assault, was dismissed. The Court followed the non-binding plea agreement at sentencing. . . . Petitioner was not sentenced to any additional time for the Witness Tampering charge. His sentence for the Burglary charge alone would have been 10 years in prison with three years suspended.

. . . Petitioner claims he never believed he was guilty of the charge. This claim is belied by the discussions he had with the Court when he twice tried to change his plea to the Witness Tampering charge. . . .

. . .

. . . When Petitioner initially tried to change his plea, he told the Court that his attorneys had advised that they did not believe it was in his best interest to plead guilty to that charge. He believed pleading guilty was in his best interest. . . .

Petitioner also claims that he made a mistake in pleading guilty. . . . Petitioner states the mistake is based on his ignorance of the possibility of a prison sentence for the Witness Tampering conviction; that knowledge would have

then forestalled his willingness to plead to the Burglary charge. The record also refutes this claim, as his attorney told the Court that the State had maintained the plea offer for months prior to Petitioner changing his plea. Consequently, Petitioner had months of notice that a prison sentence for both charges was a possibility.

Ex. I38-I40 (internal citations, quotation marks, and brackets omitted).

In the absence of other record evidence, these findings and inferences are reasonable. Mallak pled guilty against his attorneys' advice. The trial court initially rejected his plea because the factual basis was not sufficient to support it, yet he personally returned to the issue because he wanted to plead guilty. It is reasonable to infer that a defendant who behaves in this way believes he is guilty. Mallak received the sentence the State agreed to recommend, including a prison term for burglary. Given that information, it is hard to see how Mallak could claim that he was not guilty of witness tampering or that he would not have pled guilty if he had known he could receive a prison sentence.

But there is other record evidence. First, at the time Mallak pled guilty to witness tampering, he intended to go to trial on the burglary charge. Tr. July 30, 2001, at 16:7-12 (Ex. G13). His understanding that the State would recommend ten years in prison if he pled guilty to

burglary does not speak to his willingness to go to prison for witness tampering.

Second, there is the trial court's own finding that it did not advise Mallak of the maximum penalty for witness tampering. Ex. I36. That finding must be combined with the absence of any evidence in the record before this Court that Mallak knew what it was. He knew witness tampering was a felony, Tr. July 30, 2001, at 4:8-11, 4:17 (Ex. G10), but that only means a sentence of more than one year, Mont. Code Ann. § 45-2-101(22) (2001). He had already been in jail for eight or nine months when he pled guilty, Tr. Nov. 13, 2001, at 86:12-14 (Ex. H44),[10] so he could have received a felony sentence and yet spent no time in prison for witness tampering – provided, of course, his sentence on that charge was substantially less than ten years.

Third, the plea agreement conveys information only about the burglary charge. It says Mallak will plead nolo contendere to burglary, which carries a twenty-year maximum penalty, and the State will

_____

[10] See also Tr. July 30, 2001, at 7:8-10, 8:7-23 (Ex. G11) (indicating that Mallak hoped the "Pedro Blanco" letter would lead to his release from jail).

recommend a ten-year prison sentence, with three years suspended, concurrent to witness tampering. Ex. J7. The plea agreement says nothing about the sentence authorized or to be recommended for witness tampering. "Concurrent" does not mean "identical to." As Mallak pointed out on direct appeal, there would be little reason for him to reserve his right to appeal pretrial rulings on the burglary charge if the plea agreement meant he would be serving a ten-year term for witness tampering anyway. (He describes this putative decision as "just plain dumb," Ex. D3.) The agreement does not even say that Mallak will plead guilty or no-contest to witness tampering. In fact, when Mallak entered his guilty pleas to witness tampering and criminal contempt, the trial court asked whether he understood that he did so "without any plea agreement with the State with respect to those counts[.]" Tr. July 30, 2001, at 6:21-23 (Ex. G11).

Finally, when he pled guilty to witness tampering on July 30, 2001, Mallak stated on the record his reasons for doing so. They were not the usual reasons:

The Court:         Just asking you yes or no, have they [defense counsel] talked to you that they don't think

FINDINGS AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE / PAGE 31

|                  | it's in your best interest to plead guilty at this point in time? |
|------------------|-------------------------------------------------------------------|
| Mr. Mallak:      | Yeah.  But I didn't understand them, why they think that's not in my best interest. |
| The Court:       | Well, my understanding, simply from the brief conversation that I've had with them, was that in their opinion it is a better strategy to go forward on all counts, allows them to do an extended or broader cross-examination, offer additional witnesses and so forth.  Does that sound familiar with regard to their discussion with you? |
| Mr. Mallak:      | Yeah.  But I feel like it would be unfair prejudice towards the other stuff, like the domestic and the burglary. |
| The Court:       | Okay.  Well, I'm just trying to ascertain that you understand that your pleading guilty is not what your counsel is recommending you do.  Do you understand that? |
| Mr. Mallak:      | Yeah. |
| The Court:       | And do you still want to plead guilty, even understanding that? |
| Mr. Mallak:      | Yeah.  Because I asked, I mean, at the beginning if they could try to sever it, get a separate trial for it, because it's a different issue, I felt.  I think it would be contra-prejudice [sic] for these other charges, and I just – I need to get them out of the way. |

FINDINGS AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE / PAGE 32

Tr. July 30, 2001, at 3:6-4:7 (Ex. G10).

Nothing in the plea colloquy or in the entire record before this Court indicates that Mallak pled guilty for any reason other than getting the witness tampering charge "out of the way."  Ultimately, the trial court did not clearly find that Mallak believed he was guilty of witness tampering:

> The Court:   Very well.  The Court will accept your plea of guilty on Count III as being knowingly and voluntarily made.  It appears to the Court that it is your genuine desire not to go to trial to [sic] Count III, and the Court will accept that plea.  We'll proceed with Counts I and II at trial.

Id. at 16:7-12 (Ex. G13) (emphasis added).

The trial court's order does not mention these facts.  The trial court did not find them to be contradicted by other evidence or otherwise lacking in credibility.  They are all matters of record. "[T]he state-court fact-finding process is undermined where the state court has before it, yet apparently ignores, evidence that supports the petitioner's claim" if "the overlooked or ignored evidence [is] highly probative and central to the petitioner's claim" and is "sufficient to support petitioner's claim when considered in the context of the full record bearing on the issue

presented." <u>Taylor</u>, 366 F.3d at 1001 (citing <u>Miller-El v. Crawford</u>, 537 U.S. 322, 346 (2003)).

In light of all the record evidence, the trial court's inferences are not supportable.  It is highly unlikely that a defendant would decide to plead guilty to a serious offense that could result in a ten-year prison sentence just to get it "out of the way" and proceed to trial on burglary and PFMA when he knew the State was willing to recommend a ten-year sentence – half the statutory maximum for burglary – and dismissal of PFMA.  No doubt Mallak was determined to "do things his way."  Ex. I40.  But the trial court's findings omit relevant evidence to conclude Mallak made a decision that was voluntary, knowing, and intelligent.

Because the plea agreement does not convey any information about the witness tampering charge, the trial court's finding that the proposed agreement gave Mallak notice of the penalty is unsupported and therefore unreasonable.  The trial court's inferences in support of the voluntary, knowing, and intelligent nature of Mallak's plea are also unreasonable because it ignored highly probative facts in the record, including its own findings and Mallak's own statements on the record at the time he

FINDINGS AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE / PAGE 34

changed his plea, as well as the logical and logistical separation between Mallak's plea to witness tampering and his plea to burglary. Because the trial court made an unreasonable determination of the facts in light of the evidence presented to it, 28 U.S.C. § 2254(d)(2), its findings are not preclusive in this Court. <u>Taylor</u>, 366 F.3d at 1000.

### 6. De Novo Review Under <u>Boykin</u> and <u>Brady</u>

The next question is whether, on a de novo standard of review, Mallak has shown that his guilty plea to witness tampering failed to meet the constitutional standard for voluntariness. <u>Frantz v. Hazey</u>, 533 F.3d 724, 739 (9th Cir. 2008) (en banc).

<u>Boykin</u> and <u>Brady</u> establish that a defendant's choice to plead guilty must be informed by knowledge of the maximum penalty. Mallak says he did not know what it was. He says he would not have pled guilty if he had known. No evidence before the Court contradicts Mallak's assertions. The trial record is the State's responsibility, not Mallak's. <u>Boykin</u>, 395 U.S. at 242. On the current record, Mallak has shown a constitutional violation. <u>Compare, e.g.</u>, <u>United States v. Timmreck</u>, 441 U.S. 780, 784 (finding violation of Fed. R. Crim. P. 11 "technical" and rejecting § 2255

motion because movant "does not argue that he was actually unaware of the special parole term or that, if he had been properly advised by the trial judge, he would not have pleaded guilty."). Mallak requires no additional evidence to support his position.

When a guilty plea is involuntary, the error is not harmless. E.g., United States v. Harrison, 241 F.3d 289, 293-95 (2d Cir. 2001). It is true that Mallak's overall sentence was not increased as a result of his conviction for witness tampering, but he was convicted. Kercheval v. United States, 274 U.S. 220, 223 (1927) ("A plea of guilty differs in purpose and effect from a mere admission or an extra-judicial confession; it is itself a conviction."). Mallak waived his right to put the State to its burden of proving the charge beyond a reasonable doubt to a unanimous jury using only evidence and testimony subject to cross-examination and without his own self-incriminating testimony. He waived any chance at acquittal. If he did so in ignorance of information he was specifically entitled to have, and if he would not have waived these rights had he known what he should have known, then he suffered "the prejudice of an unknowing plea." United States v. Vonn, 535 U.S. 55, 69 (2002).

It is troubling that a defendant who "will do things his way" might obtain relief from a legitimate conviction based on a defect in a hearing conducted while a jury waited because the defendant had a last-minute change of heart.  However, the State has had ample opportunity to submit evidence that Mallak actually knew the penalty for witness tampering before he changed his plea.[11]  The Court presumes that if  he was advised of the penalty at the arraignment, or if a draft plea agreement that he saw stated the penalty, the State would have attached the transcript or draft agreement to its Answer.  Rule 5(c), Rules Governing § 2254 Cases; <u>see also</u> Order Requiring Answer (doc. 8) at 2 ¶ 2 (requiring submission of "[c]opies of any written plea agreements").   Both parties had an opportunity to conduct discovery.  Scheduling Order (doc. 28) at 2 ¶ 1.  Neither did so.  Neither has requested an evidentiary hearing or moved to expand the record.

---

[11]   Mallak's attorneys might have advised him of the maximum penalty, though on direct appeal he claimed they did not.  At any rate, he has made no claim of ineffective assistance of counsel in this Court.  His attorney-client privilege remains intact.  <u>Cf.</u> <u>Bittaker v. Woodford</u>, 331 F.3d 715, 718-19 (9th Cir. 2003) (en banc).   To the extent this fact is troubling, it must be noted that "[t]he requirement that the prosecution spread on the record the prerequisites of a valid waiver is no constitutional innovation."  <u>Boykin</u>, 395 U.S. at 242.

The Court must conclude that Mallak was not advised of the penalty to which his plea of guilty to witness tampering exposed him.  He says he would not have pled guilty had he known.  There is evidence in the record to support his claim. There is no clear evidence to contradict it.  The State's procedural defenses are unavailing.  Thus, the Court concludes that Mallak was convicted in violation of clearly established Federal law as determined by the United States Supreme Court.  His petition for writ of habeas corpus under 28 U.S.C. § 2254(a) should be granted as to his witness tampering conviction.

V. Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Rule 11(a), Rules Governing § 2254 Proceedings.

A. Governing Law

"A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c); Hohn v. United States, 524 U.S. 236 (1998); Lambright v. Stewart, 220 F.3d 1022, 1024 (9th Cir. 2000).    Mallak "must

demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000), or that "the questions are 'adequate to deserve encouragement to proceed further,'" <u>Lozada v. Deeds</u>, 498 U.S. 430, 432 (1991) (quoting <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 n.4 (1983)).

B. Discussion

The State does not require a certificate of appealability to appeal the granting of a state prisoner's federal habeas petition. Fed. R. App. P. 22(b)(3).

Mallak's claim against his burglary conviction asserts that he would not have pled guilty if he had known the trial court would consider his commission of the burglary a "violent" offense. Violence or use of force is not an element of burglary under Montana law, so Mallak had no federal right to be advised of it or to be convicted only on proof of violence on a reasonable doubt standard. The trial court's finding that he used violence was not a "consequence" of his guilty plea. The finding was plainly supported by the evidence, including Mallak's own admissions. The voluntariness of Mallak's plea to burglary is not implicated. This claim

FINDINGS AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE / PAGE 39

does not fairly allege a violation of federal law, much less make a substantial showing of the denial of a constitutional right. A certificate of appealability is not warranted.

Based on the foregoing, the Court enters the following:

## RECOMMENDATION

1.  Mallak's petition (docs. 1, 6) should be DENIED with respect to the burglary conviction and GRANTED with respect to the witness tampering conviction.

2.  The District Court should issue an Order Conditionally Granting Writ stating that the judgment entered in Yellowstone County Cause No. DC-56-200-930 on November 23, 2001, is VACATED as to witness tampering. The State should be permitted to renew proceedings on that charge within sixty (60) days from the date of the Federal District Court's Order. If the proceedings are not timely renewed, the State must permanently release Mallak from such custody and collateral consequences as are based on his vacated conviction for witness tampering.

3.  A certificate of appealability should be DENIED as to the

FINDINGS AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE / PAGE 40

burglary conviction. If the District Court adopts the Recommendation, the State does not require a certificate of appealability with respect to the witness tampering conviction.

4. The Clerk of Court should be directed to enter judgment by separate document in favor of the State and against Mallak as to the burglary conviction and in favor of Mallak and against the State as to the witness tampering conviction.

### NOTICE OF RIGHT TO OBJECT TO FINDINGS & RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this Findings and Recommendations within fourteen (14) calendar days of the date entered as indicated on the Notice of Electronic Filing. A district judge will make a de novo determination of those portions of the Findings and Recommendations to which objection is made. The district judge may accept, reject, or modify, in whole or in part, the Findings and Recommendations. Failure to timely file written objections may bar a de novo determination by the district judge and/or waive the right to appeal.

<u>Mallak must immediately inform the Court and counsel for the State of any change in his mailing address.</u>  Failure to do so may result in dismissal of this action without notice to him.

DATED this <u>5th</u> day of February, 2010.

<u>/s/ Carolyn S. Ostby</u>
Carolyn S. Ostby
United States Magistrate Judge

FINDINGS AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE / PAGE 42